**Yvonne PIERCE, Plaintiff,**

v.

**Joseph SHOWELL, Pastor, Gospel Ark Temple Bible Way Church, Defendant.**

**No. CIV.A.04–1916(GK).**

United States District Court, District of Columbia.

Feb. 23, 2005.

Jimmy A. Bell, Upper Marlboro, MD, for Plaintiff.

Timothy Guy Smith, Raden & Smith, P.C., Silver Spring, MD, for Defendant.

1. Defendant did not file a Reply.

2. For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiff. *Shear v.*

## MEMORANDUM OPINION

KESSLER, District Judge.

Plaintiff, Yvonne Pierce, brings this diversity action against Joseph Showell, Pastor of the Gospel Ark Temple Bible Way Church alleging violations of Maryland common law and the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13–303 (2003). This matter is now before the Court on Defendant's Motion to Dismiss. Upon consideration of the Motion, Opposition,[1] and the entire record herein, and for the reasons stated below, Defendant's Motion to Dismiss is **denied**.

## I. BACKGROUND [2]

In January 2001, Plaintiff was approached by a personal friend and member of Gospel Ark Temple Bible Way Church ("Gospel Ark") about an investment plan that claimed to return five times the investment plus the initial investment. Compl. ¶ 6. Plaintiff attended a meeting at Gospel Ark with Defendant, who provided Plaintiff with further information about the investment opportunity. *Id.* ¶¶ 7, 8. At this meeting, Defendant "specifically stated that the opportunity was a thirteen month investment and instructed Plaintiff to have her money for the investment on January 23, 2001." *Id.* ¶ 9.

On January 23, 2001, Plaintiff met Defendant at Gospel Ark and presented him with a certified check in the amount of $7,000. *Id.* ¶ 10. Plaintiff was then presented with a Promissory Note, signed by Defendant, promising to pay her "All amounts outstanding" within "30 days of the maturity date." *Id.* ¶ 11. The Promissory Note stated further that "If any amounts payable hereunder are not paid

*Nat'l Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir.1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint or from the undisputed facts presented in the parties' briefs.

within thirty (30) business days of their due date that then (i) thereafter such amounts shall bear interest at an annual rate of ten percent (10)." *Id.* ¶ 12. The documents signed by Plaintiff stated that the contracts would be governed by the laws of Maryland. *Id.* Defendant projected that Plaintiff's investment return would be $42,000 and that Plaintiff would receive this return thirteen months later, i.e., in March 2002. *Id.* ¶ 13.

During the initial thirteen month period, Plaintiff met with Defendant on a monthly basis at Gospel Ark. At these meetings, Defendant gave Plaintiff monthly statements as to the progression of Plaintiff's investment. *Id.* ¶ 14.

On September 30, 2001, Plaintiff retired from her job in anticipation of the $42,000 return that she was told she would receive in March 2002. *Id.* ¶ 17.

In February 2002, Defendant told Plaintiff that there was a delay in receiving Plaintiff's return. Plaintiff claims that Defendant assured her that her return would be coming "the following week." *Id.* ¶ 15.

As time passed, Defendant gave Plaintiff "excuse after excuse" as to why she had not received the return on her investment. *Id.* ¶ 16. Plaintiff claims that she has "not even been able to obtain her initial principle investment of $7,000." *Id.*

Plaintiff contends that since January 2001, Defendant "has only contacted [her] a total of five times and has yet to inform [her] as to when she would receive any portion of her money back." *Id.* ¶ 18.

On November 4, 2004, Plaintiff filed the instant action alleging violations of Maryland common law and the Maryland Consumer Protection Act. In Count I of the Complaint, Plaintiff alleges fraud. In Count II, she alleges breach of contract. In Count III, she alleges violation of the Maryland Consumer Protection Act. Plain-

tiff seeks $250,000 in compensatory damages, pre- and post-judgment interest, and the cost of the instant action, including attorney's fees.

On January 26, 2005, Defendant filed the instant Motion to Dismiss.

## II. STANDARD OF REVIEW

A motion to dismiss should only be granted "when it appears beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987). Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. *Shear,* 606 F.2d at 1253.

## III. ANALYSIS

### A. The Amount in Controversy in the Instant Action Is Adequate to Support Subject–Matter Jurisdiction

District courts have original jurisdiction in diversity cases where the amount in controversy exceeds the sum of $75,000 and the parties are citizens of different states. 28 U.S.C. § 1332(a)(1). Both requirements must be met in order for a federal court to assume jurisdiction of the case. Defendant argues that Counts I and II of the Complaint should be dismissed for lack of subject-matter jurisdiction on the basis that the amount in controversy between the parties does not exceed $75,000.[3]

---

**3.** Defendant does not contest geographic di-   versity.

■ Disputes concerning the amount in controversy are decided according to the "good faith/legal certainty" test set forth in *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938).[4] *See Rosenboro v. Kim*, 994 F.2d 13, 16–17 (D.C.Cir.1993). In this case, Plaintiff claims $250,000 in compensatory damages. Compl. ¶ 51. Defendant does not contest Plaintiff's good faith belief that the amount in controversy satisfies the diversity statute. Likewise, the Court finds no reason to question this conclusion. Dismissal, then, is appropriate only if it appears to a legal certainty that the Complaint does not satisfy the jurisdictional amount required by section 1332. *See St. Paul Mercury*, 303 U.S. at 288–89, 58 S.Ct. 586. Defendant, however, has failed to show to a legal certainty that Plaintiff's claim for compensatory damages is for less than the jurisdictional amount. The fact that Defendant may have a good defense against Plaintiff's claim does not affect the determination of the jurisdictional amount in controversy. *See id.* at 298, 58 S.Ct. 586. Accordingly, Plaintiff's claim for $250,000 in compensatory damages is adequate to support subject-matter jurisdiction.

## B. The Maryland Consumer Protection Act Is Applicable to the Instant Case

■ Defendant argues that Count III of the Complaint should be dismissed because "[t]he Maryland Consumer Protection Act does not apply to this transaction as Plaintiff's allegations in its [sic] Complaint clearly indicate that all communications and transactions related to this matter occurred in the District of Columbia[.]" Def.'s Mot. at 3. This argument fails. As Plaintiff points out, "[t]he documents signed by Plaintiff stated that the contracts would be governed by the laws of Maryland." Compl. ¶ 12. The general rule is "that parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified." *Norris v. Norris*, 419 A.2d 982, 984 (D.C.1980). *See Milanovich v. Costa Crociere*, 954 F.2d 763, 767 (D.C.Cir.1992) (noting that "[u]nder American law, contractual choice-of-law provisions are usually honored"). In this case, Plaintiff is a citizen of Maryland. *See* Compl. ¶ 2. Thus, there are sufficient contacts with Maryland to meet this requirement. Accordingly, the Maryland Consumer Protection Act is applicable to the instant case.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendant's Motion to Dismiss is **denied.**

An Order will issue with this Memorandum Opinion.

---

4. The test is stated as follows:

The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

*St. Paul Mercury*, 303 U.S. at 288–89, 58 S.Ct. 586.